**Electronically Filed
Intermediate Court of Appeals
29997
30-SEP-2010
02:24 PM**

NO. 29997


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JAMES JUNGBLUT, Plaintiff-Appellant, v. GLENN NISHIO and MARC
NISHIO, Defendants-Appellees, and JOHN DOES 1-10, JANE DOES 1-10;
DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE JOINT VENTURERS
1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE NON-PROFIT
ENTITIES 1-10; DOE GOVERNMENTAL ENTITIES 1-10; DOE UNINCORPORATED
ENTITIES 1-10; AND OTHER DOE ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 05-1-1251)


MEMORANDUM OPINION
(By: Fujise and Leonard, JJ.,
with Nakamura, C.J., concurring separately)

In this motor vehicle tort case, Plaintiff-Appellant
James Jungblut (Jungblut) appeals from the Circuit Court of the
First Circuit's (circuit court)[1] July 17, 2009 Final Judgment.
On appeal, Jungblut contends that the circuit court erred by
granting Defendants Glenn Nishio and Marc Nishio's (collectively,
Defendants) motion to dismiss Jungblut's complaint with
prejudice. Jungblut contends that the circuit court abused its
discretion because it dismissed his case solely because Jungblut
failed to personally appear at a settlement conference, in
violation of Rule 12.1(a) of the Rules of the Circuit Courts of
the State of Hawai'i (RCCH). We agree.

---

[1] The Honorable Gary W.B. Chang presided.

I.

On July 14, 2005, Jungblut filed a Complaint against Defendants for negligence stemming from a motor vehicle accident. Defendants answered the Complaint and demanded a jury trial. The case was submitted to the Court Annexed Arbitration Program and, on October 31, 2007, Jungblut filed a Notice of Appeal and Request for Trial De Novo from the Arbitration Award that was issued.

On March 12, 2008, Defendants moved to dismiss this case for want of prosecution. Based in part on Jungblut's counsel's representations that the delays were his fault, the circuit court denied the motion to dismiss on April 15, 2008.

On April 24, 2008, the circuit court issued a Notice of Early Settlement Conference (First Notice) to be held on June 23, 2008. Among other things, the First Notice stated that

> (1) lead trial counsel and pro se parties shall attend the settlement conference in person and (2) the client/insurer with "full settlement authority" may either **attend** in person or be "**available by telephone**."

The First Notice warned the parties that

> [f]ailure to appear at a settlement conference or to comply with **any** of the provisions of **Circuit Court Rule 12.1** or this Notice may subject a party or their attorney to severe sanctions, including dismissal.

No transcript of the June 23, 2008 conference was included in this record, but it appears that negotiations were not fruitful at that time, the case continued, and discovery was conducted during the ten-month period thereafter.

On April 16, 2009, the circuit court issued a second Notice of Early Settlement Conference (Second Notice) setting a settlement conference for June 10, 2009. The Second Notice again included the language quoted above.

On June 10, 2009, the parties' attorneys appeared and the following exchange occurred:

> MR. MYHRE: Good afternoon, Your Honor. Jim Myhre on behalf of [Defendants].
>
> MR. HORNER: Good afternoon, Your Honor. Robin Horner for plaintiff James Jungblut.

2

THE COURT: All right. Let the record reflect the absence of plaintiff James Jungblut. And the record should also reflect that this court did orally through Mr. Horner order Mr. Jungblut to be here personally, and he is not here today. And so the court is wondering, Mr. Myhre, if your client has any motion to make.

MR. MYHRE: Uh, yes, Your Honor. We would ask that the court dismiss plaintiff's claim in this matter. This case has been pending for some time, and it's been the subject of several different motions including previous motions for failure to prosecute, motions to compel for not complying with discovery, a lot of inactivity in the case, and nonresponsiveness from the plaintiff in this case.

We've been through several different early settlement conferences in this case, and during those settlement conferences plaintiff did not appear at the settlement conference. The court tried to propose alternative ways to have this case resolved through a mock trial previously which defendants were agreeable to doing.

Plaintiff personally, as I understand it, was represented by his counsel, refused this procedure, and now here we are. We're a month away from trial or a little more than a month away from here for final settlement conference to see if we can get this case resolved. And Mr. Jungblut, plaintiff, is not here. I believe it's within the court's discretion under the rules of court to order him to appear before a settlement conference personally. He apparently has chosen not to comply, and for those reasons we would ask that the court grant our motion to dismiss his claim.

THE COURT: Okay. Mr. Horner.

MR. HORNER: Uh, thank you. As I -- as I understand the motion, I believe the motion is a motion, oral motion for sanctions for plaintiff's failure to attend the settlement conference.

THE COURT: Yes.

MR. HORNER: Uh, we acknowledge the oral order of the court for him to appear. We have presented some information to the court, as we are pleading the plaintiff could not appear today due to economic hardship. And we have provided the court with some information to verify that. We argue that plaintiff by necessity could not attend because he could not afford the -- to purchase the ticket and still pay his household expenses.

And so due to the economic hardship, and, you know, the plaintiff is ill, and I don't believe his condition is stabilized. He lacks sufficient money for treatment. He lacks medical insurance. So he cannot maintain steady employment, so he lacks the financial ability to appear today. You know, we -- we apologize to the court. We ask the court's discretion [sic] in this matter due to his situation that he could not attend. Thank you.

THE COURT: Well, let me ask Mr. Horner. I understand this case is set for trial during the week of July 20, 2009.

3

That is this summer. Is it your client's intention to come here and participate in the trial in July?

MR. HORNER: It is my belief that it is his intention to come here in July participate [sic] in the trial.

THE COURT: Okay. You can have a seat.

Uh, I think there is already a substantial record of a lack of activity in the part of the plaintiff to prosecute this action. And with respect to settlement, this is the third settlement conference that we have had. The first was in June 23, 2008, and at that time there was a further deposition that was to be taken of independent witness Mr. Espinoza, Richard Espinoza, E-s-p-i-n-o-z-a.

And the court spoke to the parties about the possibility of alternative dispute resolution in the form of binding arbitration. And the court continued the settlement conference to October 10, 2008 at which time the -- I believe the deposition of Mr. Espinoza had been taken, and there was no change in the plaintiff's settlement posture at all from the June 23rd session to the October session. And this is notwithstanding facts in the case that call into question significant issues regarding plaintiff's ability to prove and prevail in this action.

This is a motor vehicle accident case that arises out of an intersection collision that occurred on July 9, 2002. This occurred at the intersection of King Street and Punahou Street which is a signalized intersection. Both vehicles were on Punahou Street traveling opposite -- in opposite directions approaching or traveling toward the intersection.

Plaintiff was on the portion of Punahou Street that is on the makai or south side of King Street headed in the mauka or north direction. The plaintiff was driving a brown vehicle. The defendant was driving a gray vehicle. He was also on Punahou Street but traveling in the opposite direction or approaching the intersection traveling in the north to south direction. Plaintiff was traveling south to north. And as both vehicles approached the intersection, the plaintiff claims that he had the green light and he was intending to drive straight through the intersection of King Street and Punahou Street.

The defendant indicated that he was intending to turn left from Punahou Street onto King Street and that he came to a stop or he was driving behind two vehicles that also were approaching Punahou [sic] Street. And then the defendant claims that he had eventually a green arrow to allow him to turn left, and while he was in the process of executing his left turn on a green arrow, the plaintiff entered the intersection and a collision occurred. So both vehicles claim that they had the right of way -- plaintiff, by virtue of a green light, and the defendant, by virtue of a green arrow.

Um, there is the testimony of an independent witness who was at the time of the accident having lunch at Pee-Wee Drive-In which is located on the corner of Punahou and King Street at the intersection. Mr. Espinoza is a 51-year-old married gentleman, and he testifies in his deposition as follows:

Question: What happened?

Answer: Well, I was eating my lunch, and I heard squealing tires. So I looked up, and I witnessed the brown car coming mauka on Punahou across the intersection about mid -- mid-intersection, a little past mid-intersection, and it struck the vehicle making a left turn. From where I was sitting, I looked up immediate -- excuse me. I looked immediately up to the signal because it was right in my view. It was just to the left, and I saw that the arrow was green for the car turning left which was the gray vehicle.

. . . .

[THE COURT:] With that objective eye witness testimony, there is -- together with the testimony of the defendant, there are significant questions regarding liability and right-of-way in this case. And there is also a question of severity of injury as the defendant indicates the cost of repair of damage to the defendant's vehicle was $383.44. And there was no cost estimate for the repair of plaintiff's vehicle.

So notwithstanding these facts, the plaintiff has maintained a substantial settlement demand that has not waivered [sic] at all even through today, the third settlement conference. And the defendant, in light of the liability issues in the case and damages question, has only been willing to make a nominal settlement offer. And the court is perplexed by the plaintiff's insistence on maintaining a substantial settlement demand in light of the facts of this case and the law that applies to this case.

And this court has been trying to, if not settle the case, direct the parties to alternative dispute resolution in one form or another. And the defense indicated a willingness to do that, but the plaintiff has not indicated any willingness to explore ADR in lieu of going to trial.

So this court was very interested in having a face-to-face chat with Mr. Jungblut to explore the reasons why he feels that he is entitled to a substantial sum of money in a case that has significant questions regarding liability and fault. Talking over the phone or through an attorney does not satisfy this court's experience or belief based on experience that negotiations face to face are by far the most effective means of exploring settlement possibilities.

With the plaintiff sitting in the comfort of his home, he can be very confident in not agreeing to altering his settlement position at all, but this court has found that when parties are eye to eye across the table that settlement discussions are substantially more effective. And in light of the liability questions in this case, this court is of the opinion that face-to-face negotiations are clearly indicated and Mr. Jungblut's inability to be here frustrated

> this court's ability to understand Mr. Jungblut's position
> in light of the facts of the case.
>
> There has been no showing of good faith on the part of
> Mr. Jungblut in terms of prosecuting this case or to explore
> in a meaningful way settlement options or alternative
> dispute options. And the court views Mr. Jungblut's
> inability to be present today as yet another indication that
> is interfering with this court's orderly administration of
> this case.
>
> So for these and any other good cause shown in the
> record, the court finds and concludes that there is good
> cause to dismiss the instant case with prejudice. And so
> therefore the court will grant the oral motion by the
> defense.

Upon asking the parties' attorneys for further argument, Jungblut's attorney represented that Jungblut was willing to appear by way of telephone and pointed out that if the circuit court believed an in-person appearance was necessary for this settlement conference, the insurance representative should have been ordered to appear in person as well.

The circuit court explained that, based on its discussion with Jungblut's counsel just prior to the settlement conference, it understood Jungblut had not changed his position "at all" regarding settlement. As to requiring the adjuster to be present the circuit court noted that the defense had been "reasonable" and shown some "latitude" regarding its settlement offer in the past, but that because Jungblut had not changed his position regarding settlement, there seemed to be no need for the adjuster to alter his settlement position or to be present for further negotiations. The circuit court continued,

> This court was of the mind that the party who was standing
> in the way of settlement was the plaintiff, and that's who
> this court needed to negotiate with eye to eye. The defense
> was prepared to negotiate, and so this court did not believe
> it was necessary to have the adjuster physically present.
> And for the record the court was advised that the adjuster
> is also available by telephone.

On June 26, 2009, based RCCH Rule 12.1(a)(6),[2] the circuit court issued an order dismissing Jungblut's Complaint with prejudice. On July 17, 2009, the circuit court entered Final Judgment, from which Jungblut timely filed this appeal.

## II.

On appeal, Jungblut argues[3] the circuit court abused its discretion when it dismissed Jungblut's Complaint for the following reasons: (1) Jungblut should not have been required to appear in person when Defendants' insurance representative was not so ordered although neither had significantly changed their respective settlement positions; (2) Jungblut should have been contacted by telephone at the settlement conference; (3) the

---

[2] HCCR Rule 12.1(a)(6) provides,

> SANCTIONS. The failure of a party or his attorney to appear at a scheduled settlement conference, the neglect of a party or his attorney to discuss or attempt to negotiate a settlement prior to the conference, or the failure of a party to have a person authorized to settle the case present at the conference shall, unless a good cause for such failure or neglect is shown, be deemed an undue interference with orderly procedures. As sanctions, the court may, in its discretion:

> (i) Dismiss the action on its own motion, or on the motion of any party or hold a party in default, as the case may be;

> (ii) Order a party to pay the opposing party's reasonable expenses and attorneys' fees;

> (iii) Order a change in the calendar status of the action;

> (iv) Impose any other sanction as may be appropriate.

[3] Jungblut's point on appeal is in noncompliance with Hawai'i Rules of Appellate Procedure Rule 28(b)(4) as it does not state "(ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court." On this basis alone we could refuse to consider it. O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 385, 885 P.2d 361, 363 (1994); Bettencourt v. Bettencourt, 80 Hawai'i 225, 228, 909 P.2d 553, 556 (1995); City & Cnty. of Honolulu v. Kailua Auto Wreckers, Inc., 66 Haw. 532, 533, 668 P.2d 34, 35 (1983). Counsel is cautioned that future violations of the rules may result in sanctions.

Notwithstanding this violation, as the appellate courts in this jurisdiction have a policy of deciding a case on its merits, where possible, O'Connor, 77 Hawai'i at 386, 885 P.2d at 364, we address Jungblut's point on appeal on the merits.

financial hardship caused by requiring Jungblut to appear at the settlement conference was not adequately considered; and (4) Jungblut's mental illness should have been considered.

The Hawai'i Rules of Civil Procedure (HRCP) authorize the involuntary dismissal of a case for the failure to prosecute, to comply with the HRCP, or to comply with a court order.[4] However, "[d]ismissals with prejudice are not favored," Richardson v. Lane, 6 Haw. App. 614, 619, 736 P.2d 63, 67 (1987), and "[t]he power of the court to prevent undue delays and to achieve the orderly disposition of cases must be weighed against the policy of law which favors disposition of litigation on its merits." Id. at 619, 736 P.2d at 68 (quoting Marshall v. Sielaff, 492 F.2d 917, 918 (3d Cir. 1974)); see also Shasteen, Inc. v. Hilton Hawaiian Village Joint Venture, 79 Hawai'i 103, 107, 899 P.2d 386, 390 (1995).

The review of a dismissal under HRCP Rule 41(b) is for abuse of discretion, Shasteen, 79 Hawai'i at 107, 899 P.2d at 390 (quoting Compass Dev. Inc. v. Blevins, 10 Haw. App. 388, 397, 876 P.2d 1335, 1340 (1994)), and "[a]bsent deliberate delay, contumacious conduct or actual prejudice" an order of dismissal cannot be affirmed. Id. (quoting Lim v. Harvis Constr., Inc.,

---

[4]     HRCP Rule 41(b), governing involuntary dismissals, provides,

> (1)  For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against it.
>
> (2)  For failure to prosecute or to comply with these rules or any order of the court, the court may sua sponte dismiss an action or any claim with written notice to the parties.  Such dismissal may be set aside and the action or claim reinstated by order of the court for good cause shown upon motion duly filed not later than 10 days from the date of the order of dismissal.
>
> (3)  Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

65 Haw. 71, 73 647 P.2d 290, 292 (1982) (internal quotation marks omitted).

The record does not support any of these preconditions. In ruling on Defendants' motion to dismiss, the circuit court relied upon Jungblut's absence from the conference as its primary, if not only, reason for dismissing the Complaint. Initially, we question the practice of requiring the physical presence of one party, but not the other, for a settlement conference.

In any event, the circuit court did not find that Jungblut's absence from the settlement conference was contumacious nor did it find that Jungblut's absence amounted to deliberate delay of the proceedings in this case or that Defendants were actually prejudiced by the nonappearance. Moreover, the circuit court did not address Jungblut's proffered reason for his nonappearance, that is, that it would have been a severe economic hardship for him to attend because he could not afford to purchase the plane ticket and still pay his household expenses.

Finally, "[w]hile a court has inherent power to dismiss a case for want of prosecution, a dismissal of a complaint is such a severe sanction, that it should be used only in extreme circumstances when there is a clear record of delay or contumacious conduct and where lesser sanctions would not serve the interest of justice." Compass Dev., Inc., 10 Haw. App. at 396, 876 P.2d at 1339 (quoting Lim, 65 Haw. at 73, 647 P.2d at 292) (brackets, elipsis, and internal quotation marks omitted). The record does not reflect whether lesser sanctions, such as taxation of Defendants' costs for their attorney's time at the settlement conference and rescheduling the settlement conference to a date just before trial, when Jungblut did plan to return to the state, could have both served the circuit court's concerns regarding a meaningful settlement conference and would have

compensated Defendants for their expenses in sending counsel to the aborted settlement conference.

### III.

The July 17, 2009 Final Judgment of the Circuit Court of the First Circuit is vacated and the case is remanded for proceedings not inconsistent with this memorandum opinion.

DATED: Honolulu, Hawai'i, September 30, 2010.

On the briefs:

Robin R. Horner,
for Plaintiff-Appellant.

James V. Myhre
Robert A. Mash,
for Defendants-Appellees.

Associate Judge

Associate Judge